**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JOSEPH TRUSKOLASKI,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Case No.  13-CV-0610-CVE-FHM** |
| | ) |
| **JOE M. ALLBAUGH, Director,**[1] | ) |
| | ) |
| **Respondent.** | ) |

**OPINION AND ORDER**

Before the Court is the petition for writ of habeas corpus (Dkt. # 1), filed by Petitioner Joseph Truskolaski, a state prisoner appearing pro se.  Respondent filed a response (Dkt. # 7) and provided the state court records (Dkt. ## 7, 8, 9) necessary for adjudication of Petitioner's claims. Petitioner filed a reply to the response (Dkt. # 10).  For the reasons discussed below, the Court denies the petition for writ of habeas corpus.

***BACKGROUND***

In the early morning hours of June 14, 2008, law enforcement and medical personnel responded to a hotel room in Tulsa, Oklahoma, where they found Theresa Monte[2] lying dead on the bed. Dkt. # 8-7, Tr. Vol. III at 12-14.  Petitioner was in the hotel room when officers arrived.  Id. at 14-15.  The medical examiner determined that Monte died of an acute subdural hematoma caused by trauma to the head. Dkt. # 8-7, Tr. Vol. III at 82-83.  The medical examiner testified that, in his

---

[1] Petitioner is in custody at the Lawton Correctional Facility, in Lawton, Oklahoma. Pursuant to Rule 2(a), Rules Governing Habeas Corpus Cases, the proper party respondent in this matter is Joe Allbaugh, Director.  Therefore, Joe Allbaugh is substituted in place of Edward Evans, Interim Director, as party respondent.  The Clerk of Court shall note the substitution on the record.

[2] In the state court record, the victim's last name is spelled "Montie."  See, e.g., Dkt. # 8-7, Tr. Vol. III at 6; Dkt. # 8-12, O.R. at 51-53.  Here, the Court uses the spelling found in the petition. See Dkt. # 1 at  8.

estimation, the injury that caused the subdural hematoma was "no more than three days, four days" old. Id. at 85.  During their interview of Petitioner, detectives asked Petitioner if he struck Monte in the days preceding her death.  See Dkt. # 9.  Petitioner told the detectives that, although he had been drinking and could not specifically remember fighting with Monte, "[t]here couldn't have been nobody else. . . . It had to be me, and it was me, and I'm the one who did it."  Id.

The State charged Petitioner with First Degree Murder in Tulsa County District Court, Case No. CF-2009-3155.  Dkt. # 7-3 at 1.  A jury convicted Petitioner of the lesser included offense of First Degree Manslaughter and recommended a sentence of thirty-five years imprisonment.  Id.  The trial judge sentenced Petitioner in accordance with the jury's recommendation.[3]  Id.  Attorney Gregg Graves represented Petitioner at trial.  Id. at 9.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Dkt. # 7-1. Attorney Richard Couch represented Petitioner on appeal.  Id.  Petitioner raised four (4) propositions of error, as follows:

| | |
|---|---|
| Proposition 1: | Prosecutorial misconduct deprived Appellant of a fair trial. |
| Proposition 2: | The trial court abused its discretion in not granting a mistrial upon Appellant's request when the prosecutor repeatedly failed to comply with its Burks notice and the prior rulings of the trial court regarding the notice. |
| Proposition 3: | The Appellant was deprived of effective assistance of counsel. |
| Proposition 4: | Cumulative error deprived Appellant of a fair trial. |

Id.  In an unpublished summary opinion, entered August 18, 2013, in Case No. F-2011-820, the OCCA affirmed the trial court's judgment and sentence.  See Dkt. # 7-3.

_____

[3] First Degree Manslaughter is an "eighty-five percent" crime under Oklahoma law, meaning that Petitioner must serve not less than eighty-five percent of the thirty-five year sentence prior to becoming eligible to earn sentence credits or for parole.  Okla. Stat. tit. 21, § 13.1(3).

On September 13, 2013, Petitioner filed his federal petition for writ of habeas corpus.  Dkt.

# 1.  In his petition, Petitioner identifies four (4) grounds of error, as follows:

| | |
|---|---|
| Ground 1: | Prosecutorial misconduct deprived the petitioner of (a) fair trial. |
| Ground 2: | The trial court abused it's discretion by not granting (a) mistrial when the prosecutor repeatedly failed to comply with it's [sic] Burks [sic] notice and prior ruling(s) of the court concerning that notice. |
| Ground 3: | The petitioner was denied the effective assistance of counsel. |
| Ground 4: | The cumulative error deprived the petitioner of (a) fair trial. |

Id.  In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus

relief.  Dkt. # 7.

## *ANALYSIS*

### A.      Petition for Writ of Habeas Corpus

#### 1.      Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b), (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner

presented his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28

U.S.C. § 2254(b) is satisfied.

In his federal petition for writ of habeas corpus, Petitioner did not request an evidentiary

hearing, and, under the facts of the case, he would not be entitled to one.  See Williams v. Taylor,

529 U.S. 420 (2000).

#### 2.      Claims Adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  White, 134 S. Ct. at 1702 (citation omitted).  The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. (citation and internal quotation marks omitted); see Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions).  When conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States.  Id. at 68 (citations omitted).

### a.    Ground 1: Prosecutorial Misconduct

As his first ground of error, Petitioner alleges that the prosecutor committed misconduct by "fail[ing] to comply with its own [Burks notice][4] and with the trial court's prior rulings . . . regarding the notice."  Dkt. # 1 at 7 (citations omitted).  Specifically, Petitioner contends that the prosecutor committed misconduct by introducing testimony from the victim's half-sister that she observed injuries on the victim in August 2006 in Mississippi and in the summer of 2007 in Ardmore, Oklahoma; testimony from the victim's son that he had observed injuries on the victim in Michigan in 2004 and 2005 and he had received 20 calls from his mother requesting that he come break up fights; and testimony from Michigan police officer Elizabeth Kramer that she responded to a hospital in reference to an incident of domestic violence on March 28, 2007.  Id. at 8.  On direct appeal, the OCCA reviewed the claims for plain error and concluded that there was none.  Dkt. # 7-3 at 2-6.  The OCCA held that the various pieces of testimony either did not violate the Burks notice or were harmless.  Id.

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.  Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998).  Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings.  Donnelly, 416 U.S. at 643.  "To view the prosecutor's statements in context, we look

---

[4] See Burks v. State, 594 P.2d 771 (Okla. Crim. App. 1979) (requiring the state to provide notice of intent to introduce evidence of other crimes), overruled on other grounds by Jones v. State, 772 P.2d 922 (Okla. Crim. App. 1989).

first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotation marks and citations omitted); see Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

Petitioner complains that, during trial, the victim's half-sister testified that in August 2006, while the victim was in a relationship with Petitioner, the victim showed up at her house in Mississippi with "bruises on her arms, her legs" and "her lip was just healing from where she lost a tooth." Dkt. # 8-7, Tr. Vol. III at 184.[5] The victim's half-sister also testified that during the summer of 2007 the victim looked "very skinny. Very pale. . . . She had a lot of bruises." Id. at 188. Petitioner argues that the half-sister's testimony, as well as part of the testimony of the victim's son and the testimony of a Michigan police officer, exceeded the scope of State's Burks notice. However, the jury also heard testimony from other witnesses concerning prior instances of domestic violence involving the victim and Petitioner. A woman who worked with the victim testified that during 2008 the victim came to work with a black eye and another time she had a bruise on her face. Dkt. # 8-8, Tr. Vol. IV at 16, 19. A neighbor testified that, in 2008, she heard a woman "screaming for help saying, 'Help me. . . . [h]e's trying to kill me,'" and saw Petitioner "standing over the woman flailing his arms, beating this woman." Id. at 26, 29.

In addition to the evidence of prior domestic violence, the medical examiner testified that the victim died of an acute subdural hematoma caused by trauma to the head, Dkt. # 8-7, Tr. Vol.

---

[5] Although Petitioner argues that the half-sister's testimony violated the Burks notice, the OCCA held on direct appeal that it was properly admitted against Petitioner. Dkt. # 7-3 at 2-4. To the extent Petitioner challenges the OCCA's ruling with regard to the State's compliance with its Burks notice, the claim raises an issue of state law and is not cognizable in this federal habeas corpus proceeding. Estelle, 502 U.S. at 67-68.

III at 82-83, and that, in his estimation, the injury was "no more than three days, four days" old, id. at 85.[6]  Furthermore, detectives asked Petitioner whether he struck the victim in the days before her death.  Petitioner responded:

> I had to have.  In my head I know I did now.  And you know I did. . . . But if she had them marks and stuff, yeah it was me.  There couldn't have been nobody else. . . . It had to be me, and it was me, and I'm the one who did it.

See Dkt. # 9.

Given the strength of the evidence properly admitted against Petitioner, the Court cannot say that any of the alleged instances of prosecutorial misconduct "tipped the scales in favor of the prosecution," Fero, 39 F.3d at 1474, thereby rendering Petitioner's trial fundamentally unfair. Therefore, the OCCA's adjudication of the claims contained in Ground 1 was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  The Court denies habeas relief on Ground 1.

### b.      Ground 2: Failure to Grant Mistrial

As his second ground of error, Petitioner alleges that "[t]he trial court abused it's [sic] discretion by not granting (a) mistrial when the prosecutor repeatedly failed to comply with it's [sic] Burks notice and prior ruling(s) of the Court concerning that notice."  Dkt. # 1 at 19; see supra Section A.2.a.  Petitioner contends that he was "denied a fair trial and sentencing proceeding by the prosecutor's actions in failing to comply with its own Burks Notice and prior rulings of the trial court regarding the notice."  Dkt. # 1 at 20-21.  On direct appeal, the OCCA concluded that "the

---

[6] The defense argued that the victim sustained the fatal head trauma two weeks earlier from an unknown assailant.  See id. at 10.  However, the emergency room physician who treated the victim on June 3, 2008 – eleven days before the victim died – for injuries sustained in an assault, testified that, on that day, "[t]here [was] no evidence of any bleed" and "[n]othing indicating that she had any recent injury" to her head.  Id. at 100, 102, 103.

record does not support Truskolaski's claims that the prosecutor violated the trial judge's <u>Burks</u> rulings.  There is no basis, therefore, to conclude that the trial judge abused his discretion by overruling the mistrial motion" and Petitioner's "due process rights were not violated by the trial judge's denial of the mistrial motion."  Dkt. # 7-3 at 6.

Under state law, the declaration of a mistrial is within the trial court's discretion.  <u>Knighton v. State</u>, 912 P.2d 878, 894 (Okla. Crim. App.1996).  "A trial court abuses its discretion when its ruling is clearly made outside the law or facts of the case."  <u>Id.</u> (citation omitted).  As stated above, a matter of state law cannot serve as a ground for federal habeas relief.  <u>Estelle</u>, 502 U.S. at 67–68. Therefore, to the extent that Petitioner raises a state law claim, the claim is not cognizable in this habeas corpus proceeding.

To the extent that Petitioner raises a federal due process claim, habeas corpus relief is not available for claims of prosecutorial misconduct unless the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.  <u>Donnelly</u>, 416 U.S. at 642-45.  In light of the strength of the evidence against Petitioner, as discussed above in Section A.2.a., the Court cannot say that Petitioner's trial was rendered fundamentally unfair by prosecutorial misconduct and the trial judge did not violate Petitioner's due process rights by denying Petitioner's motion for a mistrial.  Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  The Court denies habeas relief on Ground 2.

### c.      Ground 3: Ineffective Assistance of Counsel

As his third ground of error, Petitioner alleges that he "was denied the effective assistance of counsel." Dkt. # 1 at 29.  Specifically, Petitioner contends that his "trial counsel failed to request redaction of [Petitioner's] recorded statement to police where [Petitioner] stated that his first wife had died of an overdose and that it wasn't good because this was two times in his life." Id. at 22. Petitioner avers that counsel should have requested redaction of the statement because "it [was not] admissible to prove intent, motive, and absence of mistake or accident in this case" as it "concerned another person than the alleged victim in this case" and because the statement's "probative value is substantially outweighed by the danger of unfair prejudice." Id. (citation omitted).  On direct appeal, the OCCA concluded that Petitioner's trial counsel was not ineffective because "had counsel requested redaction of the statement on this ground, the request would have been denied by the trial judge." Dkt. # 7-3 at 7.

To be entitled to habeas corpus relief on the first part of his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). See 28 U.S.C. § 2254(d).  Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims.  A defendant must show that (1) his counsel's performance was deficient and that (2) the deficient performance was prejudicial.  Strickland, 466 U.S. at 687.

A petitioner can establish the first prong of Strickland by showing that counsel performed below the level expected from a reasonably competent attorney in a criminal case.  Id. at 687-88. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (citation omitted).  In making this determination, a court must

"judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689 (citation omitted).

A petitioner can establish the second prong of Strickland by showing that this deficient performance prejudiced the defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999); Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating that a petitioner must show that counsel's errors rendered the results of the trial unreliable).  "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. Review of a state court's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (internal quotation marks and citation omitted) (noting that a habeas court must "take a highly deferential look at counsel's performance" under Strickland and "through the deferential lens of § 2254(d)" (internal quotation marks and citations omitted)).

Petitioner has not shown that the OCCA's application of Strickland and adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law. As the OCCA noted, Petitioner's "statement did not indicate that the overdose was an illegal drug overdose or that Truskolaski was culpable in any way." Dkt. # 7-3 at 7.  Because the statement did

not implicate Petitioner in the death of his first wife or in any other prior bad acts involving his first wife, Petitioner has not shown that the statement would have been redacted had his trial counsel requested it.  Petition has not demonstrated that his attorney performed deficiently and has failed to show that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  The Court denies habeas relief on Ground 3.

### d.    Ground 4: Cumulative Error

As his fourth ground of error, Petitioner avers that "cumulative error deprived the petitioner of (a) fair trial." Dkt. # 1 at 31.  Specifically, Petitioner alleges that "[t]he cumulative effect of the errors argued [in his petition] denied [Petitioner] a fair trial, tainted the jury's verdict, and rendered his sentencing unreliable."  Id. at 23.  On direct appeal, the OCCA concluded that "[t]here are no errors, considered individually or cumulatively, that merit relief in this case."  Dkt. # 7-3 at 8 (citation omitted).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  United States v. Wood, 207 F.3d 1222, 1237 (10th Cir.2000) (citation and internal quotation marks omitted).  The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors.  Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir.2003).  Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review.  Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir.2009). Cumulative impact of non-errors is not part of the analysis.  Le v. Mullin, 311 F.3d 1002, 1023 (10th

11

Cir.2002) (citation omitted).  "[T]he task merely consists of aggregat[ing] all the errors that have been found to be harmless and analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir.2013) (citation and internal quotation marks omitted).

In this case, the Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis.  Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Therefore, habeas relief is denied on Ground 4.

**B.      Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing."  28 U.S.C. § 2253.  A petitioner can satisfy the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citation omitted).

After considering the record in this case, the Court concludes a certificate of appealability should not issue.  Nothing suggests that this Court's application of AEDPA standards to the OCCA's decision is debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935, 937-38 (10th Cir. 2004).  A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The Clerk shall note on the record the substitution of Joe M. Allbaugh, Director, in place of Edward Evans, Interim Director, as party respondent.

2.      The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate judgment shall be entered in this matter.

**DATED** this 2nd day of August, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE